## COLUMBIA MACHINE & STOPPER CORPORATION v. ADRIANCE MACHINE WORKS, Inc.

No. 469.

Circuit Court of Appeals, Second Circuit.
July 8, 1935.

### PER CURIAM.

The defendant has appealed · from a final decree in this suit, the appeal from the interlocutory decree in which we decided twenty years ago (226 F. 455); the accounting has dragged through the incredible interval. The patent (Lawson, 1,095,-406) was for a machine for capping bottles, the capping tool of which was forced up and down by the revolution of an upright shaft which carried a "cam-ring." A slot in the ring engaged a lug upon the capping tool which it reciprocated as it rotated with the shaft. The machine, by which after several efforts the defendant finally succeeded in evading the claim, contained all the elements of claim 6, the only claim in issue, except that instead of a "cam-ring" with two edges, it left out the under edge and forced the return of the tool by means of a spring. The result was the same, for the rotation of the shaft still cammed the lug down, though it was the spring which forced its return. There had been two infringing machines called No. 805 and No. 805–A; the evading machine was No. 805–B; it was commercially interchangeable with the other two, and had it existed before the defendant began to infringe would have been a perfect "standard of comparison." The case would have been comparatively simple but for the doctrine, if it be a doctrine, that nothing devised after infringement to escape infringement can be used as a "standard of comparison." Cincinnati Car Co. v. N. Y. Rapid Transit Corp'n, 66 F.(2d) 592, 594 (C. C. A. 2), did not involve that question, but in Philadelphia Rubber Works Co. v. U. S. Rubber Reclaiming Works, 277 F. 171, 177 (C. C. A. 2), we said that such a device could not be a standard. Cf. Western Glass Co. v. Schmertz Wire Glass Co., 266 F. 730, 737 (C. C. A. 7). Generally speaking that may indeed be true, but it would be somewhat hazardous to say that if a patent could be avoided by an entirely obvious substitute, the new machine, though later to appear, could never be a proper "standard of comparison." We leave open that possibility, and will assume that machine No. 805–B was not such a standard.

The invention being for an improvement and a limited improvement, it was in general the plaintiff's duty to allocate its contribution to the profits, and if it failed to do so, it failed altogether. This is the rule in this and the Sixth Circuits, even when it appears that the plaintiff cannot

James F. Hubbell, of Utica (Frederick Bachmann, of New York City, of counsel), for appellant.

Williams, Rich & Morse, of New York City (Henry D. Williams, Howard M. Morse, and Giles S. Rich, all of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

make an apportionment. James L. Taylor Mfg. Co. v. Steuernagel, 19 F.(2d) 298 (C. C. A. 2); Rockwood v. General Fire Extinguisher Co., 37 F.(2d) 62 (C. C. A. 2); Cincinnati Car Co. v. New York R. T. Corp., supra (C. C. A.) 66 F.(2d) 592. Our decision in Stromberg Motor Devices Co. v. Zenith-Detroit Co., 73 F.(2d) 62, 64, is not to the contrary. A majority of the court there thought that the improvement gave "the entire value to the combination"; that when the infringer sold its own carburetor, the "intervention made that carburetor the article its customers wanted." The difference between the judges was not in principle, but only as to the facts. Here it would be absurd to say that the "cam-ring" as opposed to the "cam and spring" gave the entire value to the bottle capper, or made it the article which the defendant's customers wanted. They wanted a reciprocating capper and were wholly indifferent how it was returned, so long as it was returned with speed enough. This the event proved, for the machine, No. 805–B, sold quite as readily as the others. Thus the plaintiff could not recover the whole profits.

■ Two methods of apportionment have been suggested. The first depended upon the underlying notion that since the invention resided in the "cam-ring," it must have contributed that proportion to the profits which the cost of the parts embodying the "cam-ring" bore to the cost of the whole machine. There is nothing in the books to support this, and surely it is not sound in principle. Applied to a chemical composition for example, the solecism involved would be at once apparent; a catalyst in the most trifling quantity might contribute the whole value to the composition though its cost was nominal. So too of a machine; an insignificant part might so change its operation as to greatly increase its value; but the cost would in no sense measure the difference. This was the master's method and the judge was right to reject it. He himself chose the second method, which was to take as the contribution of the invention that proportion of the profits which the cost of all but the feeding mechanism bore to the cost of the whole machine. The vice was the same as of the master's, and indeed this apportionment appears to be little more than a concession to the de-

fendant in misericordiam. Some feed was necessary in an automatic machine, and it is as little logical to disregard it as to disregard any other part. If the judge's computation is to stand at all, it can be only because the plaintiff is entitled to all the profits, which we have held that it was not. So much for profits from the sale of the machines themselves.

■ Both the master and the judge also allowed the entire profits on all the spare parts supplied by the defendant, not only on those of machine No. 805 which were sold after the patent issued, but on a number sold before; and this last was right, for the buyers' use was an independent infringement to which the defendant contributed by replacing worn out parts. From these profits the master deducted the factory "overhead" expenses, which the judge erroneously disallowed. But the whole issue is moot in view of what we have decided as to profits on the machines themselves; was consistent indeed only with an allowance of the entire profit. If the plaintiff was charged with the duty of allocating to the invention the machine's proper contribution, a fortiori it was charged with the same duty as to new parts. The plaintiff could recover nothing from the users themselves except after an apportionment; we do not see on what principle the defendant should be in worse case for contributing to the users' tort.

■ Thus the decree must be reversed in toto. This is as it should be; the invention was of the most trifling character; it never had any real value, as was finally demonstrated when Judge Hough held that machine No. 805–B was not an infringement, relying upon Brewington's patent, No. 860,787. Judge Veeder had distinguished that very reference only because the "sealing head" was returned by a spring, which turned out to be an equally satisfactory arrangement. The claim had been allowed apparently only because of the tenuous distinction between the "cam-ring" and the "cam and spring" of Brewington; it was always the shadow of a shade. However, if the plaintiff wishes, it may try to prove a reasonable royalty, the evidence for which does not exist in the record before us. But the court must be more affirmatively active to prevent delays.

Decree reversed; cause remanded.